UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

LACY T. EPPERSON, JR., EXECUTOR
OF THE ESTATE OF MARY ADAMS
EPPERSON, DECEASED,
          Plaintiff,

v.                                      Civil Action No. 4:05cv2953

NORTHROP GRUMMAN SYSTEMS
CORP., NEWPORT NEWS SHIPBUILDING
AND DRYDOCK COMPANY, NEWPORT
NEWS SHIPBUILDING, INC.,
          Defendants.

## ORDER AND OPINION

Pending before the court is plaintiff's Motion for Remand, seeking to remand this case to the Circuit Court for the City of Newport News, Virginia. Plaintiff filed this motion in response to a Notice of Removal, filed by defendants, Northrop Grumman Systems Corp., Newport News Shipbuilding and Drydock Company, and Newport News Shipbuilding, Inc. (collectively "the Shipyard").[1] After consideration of the memoranda and materials submitted by the parties, for the reasons set forth herein, plaintiff's Motion to Remand is **GRANTED**.

### I. Factual and Procedural History

Plaintiff, Lacy T. Epperson, Jr., commenced this action by filing a Motion for Judgment in the Circuit Court for the City of Newport News against the following corporations: Northrop

---

[1] Plaintiff claims that Northrop Grumman Systems Corp. is the "parent company" of Newport News Shipbuilding and Drydock Company ("NNS"). Defendants state that Newport News Shipbuilding Inc. is the parent company of NNS and that Northrop has never owned, operated or controlled NNS and that "at the appropriate time" Northrop plans to file a motion to dismiss. As noted above, for the purposes of this opinion, these entities will be collectively referred to as "the Shipyard."

Grumman Systems Corp., Newport News Shipbuilding and Drydock Company, Newport News

Shipbuilding Inc., Tenneco, Inc. (former owner of the Newport News Shipyard), Owens-Illinois,

Inc. (an asbestos manufacturer), and Waco, Inc., (an asbestos distributor and installer).  Plaintiff,

acting as executor of the estate of his mother, Mary Adams Epperson, alleges in his Motion for

Judgment that his mother developed malignant mesothelioma from her exposure to asbestos dust

and fibers that she came into contact with by handling the clothes of both plaintiff and his father,

Lacy T. Epperson, Sr.  See Mo. for Judgment ¶ 12.  The contaminated clothing was brought into

plaintiff's decedent's home as a result of plaintiff's father being employed as a "Pipefitter" at the

Shipyard from 1943 to 1949 and the plaintiff being employed as a "Pipefitter" at the Shipyard

from 1961 to 1964.  Id. at ¶ 8.  Plaintiff's mother was never an employee of the Shipyard,

however, she regularly handled and washed the asbestos contaminated work clothes of her

husband and son.  Id. at ¶¶ 9, 12.  During the time that plaintiff and his father were Shipyard

employees, the Shipyard constructed, repaired, and renovated both commercial vessels and

United States Navy vessels; plaintiff acknowledges that asbestos exposure occurred not only in

Shipyard buildings and on commercial vessels, but also on military vessels.  Id. at ¶ 11; Pl. Mo.

Remand at p.1.

On October 24, 2005, in response to plaintiff's Motion for Judgment filed in state court,

defendants filed a Notice of Removal in the United States District Court for the Eastern District

of Virginia.  Defendants premised removal on 28 U.S.C. § 1442(a)(1), which permits removal of

civil actions instituted against an agency or officer of the United States, or an individual acting

under the authority of such officer.  28 U.S.C. § 1442(a)(1).  Defendants' Notice of Removal

asserts the federal government contractor defense, alleging that because defendants were acting

under the direction of the United States Navy they are immune from liability for injuries arising

out of asbestos exposure that occurred on United States Navy vessels.

On November 18, 2005, plaintiff filed a Motion for Remand, claiming that defendants

failed to establish a colorable federal defense to plaintiff's claims, making removal improper.

Furthermore, plaintiff alleges that defendants failed to establish a causal nexus between

defendants' actions under the direction of the Navy and plaintiff's claims.  Defendants filed their

response in opposition to remand on December 6, 2005, and plaintiff filed his reply on December

12, 2005; therefore, the matter is now ripe for review.

## II. Discussion

Plaintiff's Motion for Remand asserts that this court lacks jurisdiction over this matter

based on defendants' failure to satisfy the requirements of the federal officer removal statute.

The burden of establishing removal jurisdiction rests with the party seeking removal.  Mulcahey

v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Any doubts as to the

propriety of the removal are to be resolved in favor of remand to state court.  See Shamrock Oil

& Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); Mulcahey, 29 F.3d at 151 ("Because removal

jurisdiction raises significant federalism concerns, [courts] must strictly construe removal

jurisdiction."); Branch ex rel. Branch v. Coca-Cola Bottling Co. Consol., 83 F. Supp. 2d 631,

633 n.3 (D.S.C. 2000) (holding that a court should presume that a case lies outside of federal

jurisdiction and rejecting the defendant's claim that such principle had been "eroded by a 'recent

trend' of interpreting removal statutes 'less strictly'").[2]  Additionally, a district court's decision to

---

[2] Defendants argue that removal under § 1442(a)(1) should be broadly construed, and cite
Willingham v. Morgan, 395 U.S. 402 (1969) and Kolibash v. Comm. on Legal Ethics of West
Virginia Bar, 872 F.2d 571, 576 (4th Cir. 1989).  It appears that defendants are correct that the

3

remand a case to state court for lack of jurisdiction is not reviewable.  28 U.S.C. § 1447(d);

Hinson v. Norwest Financial South Carolina, Inc., 239 F.3d 611, 614 (4th Cir. 2001).

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides that a civil action

commenced in state court against "[t]he United States or any agency thereof or any officer (or

any person acting under that officer) of the United States or of any agency thereof, sued in an

official or individual capacity for any act under color of such office" may be removed to federal

court.  28 U.S.C. § 1442(a)(1).  In Mesa v. California, 489 U.S. 121 (1989), the Supreme Court

set forth the criteria for removal pursuant to 28 U.S.C. § 1442(a).  The Court required that a party

seeking removal establish: (1) that it acted under the direction of a federal officer; (2) that there

exists a colorable federal defense to the plaintiff's claims; and (3) that there exists a causal nexus

between the plaintiff's claims and the acts performed by the defendant under the authority of a

federal officer or agency.  Mesa, 489 U.S. at 124-25, 129-34; see also McCormick v. C.E.

Thurston & Sons, Inc., 977 F. Supp. 400, 403 (E.D. Va. 1997).

**A. Acting Under the Direction of a Federal Officer**

Although the parties disagree on the extent of the Shipyard's projects that were

commercial versus military during the time plaintiff and his father were employed at the

Shipyard, the parties agree that plaintiff and his father were exposed to asbestos, at least in part,

---

federal officer removal statue, 28 U.S.C. § 1442(a)(1), should be broadly construed; for example, a defendant need only assert a "colorable" federal defense to establish removal jurisdiction. However, even when applying a broad statute, removal jurisdiction must be strictly construed because the federal courts' limited jurisdiction "is not to be expanded by judicial decree" because federal courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Therefore, when applying the broad test established by the Supreme Court in Mesa v. California, 489 U.S. 121 (1989) to determine if the requirements of § 1442(a)(1) are met, if the court still has doubts as to the propriety of removal then remand is proper.

through projects on military vessels.  Plaintiff does not challenge defendants' assertion that when

completing a military project, the Shipyard was required to follow military specifications in

constructing, repairing, or refurbishing a military vessel.  Furthermore, to establish the Navy's

control over such projects, the Shipyard has submitted several exhibits, including the affidavits

of Ronald Ward, former Vice-President of Contracts and Pricing for Newport News Shipbuilding

and Drydock Company ("NNS"), and Bernard P. Clark, who became Program Director for

Public-Private Initiatives at NNS in 2002, and prior to that, was in the Navy and held various

positions at Naval Shipyards, including supervising Naval Shipyards from 1983 through 2002.

See  Def. Opp. to Remand, Exhibits A & B.

      Based on its review of these and other exhibits, as well as the parties' memoranda, the

court finds that defendants were acting under the control of the United States Navy and its

officers when constructing or repairing Naval vessels.  See Pack v. AC & S, Inc., 838 F. Supp.

1099, 1103 (D. Md. 1993) (finding that showing of strong government intervention establishes

direct control).  The Ward and Clark affidavits along with supporting contract documents

establish that defendants constructed vessels according to precise specifications, promulgated by

the United States Navy and administered by its officers.[3]  Likewise, although plaintiff contends

that "[m]uch of the exposure of Plaintiff's family members was to asbestos-containing products

used during the construction, repair, or renovation of commercial ships and private buildings at

the Shipyard," Pl. Opp. to Removal at p.5, plaintiff admits that at least some exposure occurred

---

[3] Specifically, the Ward affidavit discusses the level of control exercised by the Navy in paragraphs 6-12 and attached to the affidavit is a contract for the construction of two nuclear submarines entered into between NNS and the Navy in 1963.  The contract includes language indicating that Naval plans were to be followed without deviation and that work was subject to review and approval by the government.

on military vessels.  Therefore, as the Shipyard has established the first prong of the <u>Mesa</u> test,

the court turns to plaintiff's contention that removal was improper based on defendants' failure to

assert a colorable defense and failure to establish a causal nexus.

### B. Colorable Federal Defense and Causal Nexus

Under the second prong of the <u>Mesa</u> test, defendants "do[] not need to show for the

purposes of the removal that the[ir] defense is meritorious, but only whether there is a colorable

claim to such a defense." <u>Pack</u>, 838 F. Supp. at 1103; <u>see</u> <u>also</u> <u>Mesa</u>, 489 U.S. at 128-29.  Under

the third prong, defendants must establish that a  "causal nexus" exists between actions taken

under color of federal office and the plaintiff's claims.  <u>Mesa</u>, 489 U.S. at 132-34.  In their Notice

of Removal, defendants rely on <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500 (1988) for the

proposition that government contractor immunity provides a colorable defense as well as

establishes a nexus between defendants' actions and plaintiff's claims.  However, plaintiff

correctly highlights an exception to <u>Boyle</u>, as the Eastern District of Virginia has repeatedly held

that government contractor immunity does not apply in failure to warn cases.  Therefore, as

discussed below, the critical inquiry before the court is whether plaintiff's Motion for Judgment

alleges only failure to warn, or whether it also alleges a products liability claim against the

Shipyard.  Because the court concludes that plaintiff's Motion for Judgment only seeks relief

from the Shipyard based on the theory of failure to warn, defendants have not asserted a

colorable federal defense or established a casual nexus; as a result, remand is proper.[4]

The federal government is generally immune from suit based on the design of military

---

[4] Defendants do not allege that government contractor immunity would apply if this were strictly a failure to warn case, but rather, argue that this case is <u>not</u> strictly a failure to warn case.

equipment because the appropriate design involves "not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." Boyle v. United Techs. Corp., 487 U.S. 500, 511 (1988).  Such immunity is likewise extended to insulate a government contractor when the government removes a contractor's discretion and mandates construction under strict specifications.  See id. at 512 ("It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.").  The government contractor immunity defense is available when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  Id.

A well established exception to government contractor immunity dictates that such immunity does not apply in failure to warn cases.  See McCormick v. C.E. Thurston & Sons, Inc., 977 F. Supp. 400, 403 (E.D. Va.1997) ("[I]n the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases."); Oliver v. Oshkosh Truck Corp.,  96 F.3d 992, 1003 (7th Cir. 1996) (finding that "design defect and failure to warn claims differ practically as well as theoretically" and that to be insulated under government contractor immunity for failure to warn a defendant must show "the government exercised its discretion and approved certain warnings"); Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 664-65 (E.D. Tex. 1999) (holding that because the government

"provided no direction or control on warnings," there were "no specifications . . . sufficient to invoke the Boyle contractor defense").   The exception to government contract immunity exists because as long as the government does not mandate specific warnings or prohibit warnings, a civilian contractor can follow government specifications while at the same time protect employees by mandating safe handling though workplace education and safety procedures or, at a minimum, by requiring printed warnings.  However, if the government does mandate a specific warning, or the lack thereof, the exception would no longer apply because the contractor would not have the freedom to determine appropriate warnings.  See Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 401 (5th Cir. 1998) (denying a motion to remand in part because the contractors hired to produce Agent Orange failed to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract").

To further illustrate the proper application of government contractor immunity, the Supreme Court in Boyle presented a hypothetical scenario focusing on the potential for conflict between state laws and federal contracts.  Boyle, 487 U.S. at 509.  The hypothetical imagined the United States contracting for the purchase of an air conditioning-unit and specifying by contract the "cooling capacity but not the precise manner of construction."  Id.  The Court explained that a state law requiring that such units "include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary."  Id.  Because the contractor could comply with the "state-prescribed duty of care" and still follow the terms of the contract there would be no need for the state law to be pre-empted; thus, there would be no need for the contractor to be shielded by immunity.  See id.  Likewise, if a Naval contract mandates

8

the use of asbestos insulation on a miliary vessel, yet provides no requirements as to the

installation procedure or warnings to be provided to civilians installing the asbestos, the

contractor could comply with everything "promised the Government" while at the same time

following the "state-prescribed duty of care" to both warn employees and to create procedures to

avoid potentially fatal exposure to asbestos dust.  See, e.g., Adams v. Alliant Techsystems, Inc.,

201 F. Supp. 2d 700, 707 (W.D. Va. 2002) ("[T]he productions of munitions for the Army is

uniquely a federal interest, [however] defendants have not demonstrated that the duty of care

defendants owe their employees conflicts with or even burdens defendants' federal regulatory or

contractual obligations.").

 Here, considering plaintiff's father's and plaintiff's exposure to asbestos that occurred on

military vessels, defendants have not presented evidence suggesting that the government in any

way regulated warnings associated with asbestos.  Likewise, defendants have presented no

evidence that the government dictated installation procedures, such as regulating whether

asbestos was wetted prior to removal, whether respirators or other air quality controls were in

place, or whether contaminated clothing was required to be properly disposed.  To the contrary,

plaintiff has highlighted evidence that indicates such warnings and procedures were the

responsibility of the Shipyard.[5]

---

 [5] First, plaintiff points to the 1963 Naval submarine contract, an exhibit to the Ward
Affidavit provided by defendants.  The contract requires NNS "to take all reasonable precautions
in the performance of the work under the contract to protect the health and safety of employees
and of members of the public and to minimize dangers from all hazards to life and property . . . ."
Def. Opp. to Remand, Exhibit A ,  Article 9.  Plaintiff also states that when NNS eventually
instituted asbestos safety procedures they did so without reference to the Navy.  See Pl. Rebuttal,
at p.6.  To support this claim, plaintiff provides NNS "Procedure S-1020," a safety procedure for
"control, handling, and disposal of asbestos," which became effective November 10, 1975.  See
id., Exhibit B.  The new safety procedure lists its "Scope" as "encompass[ing] all operations both
in shop and on ship that involve the handling of asbestos or asbestos containing materials" and

Therefore, not only in "thousands" of previous asbestos cases did this court find that failure to warn cases are not subject to government contractor immunity, but the facts here indicate that, based on the reasoning in <u>Boyle</u>, the government contractor immunity defense does not apply to plaintiff's failure to warn claims.  Likewise, the immunity defense does not apply to plaintiff's allegations relating to safety procedures such as requiring wetting, respirators, or disposal of contaminated clothing, because the lack of such procedures is synonymous with defendants' failure to warn employees of the dangers of asbestos.  As discussed in detail below, because the allegations contained in plaintiff's Motion for Judgment are properly construed as alleging only that the Shipyard failed to warn of the dangers of asbestos, remand is appropriate.

**<u>Plaintiff's Motion for Judgment</u>**

Plaintiff's Motion for Judgment seeks relief based on the negligence of all defendants in that they failed to warn plaintiff and his father of the dangers of asbestos.  <u>See</u> Mo. for Judgment, ¶¶ 14 -19.  Specifically, paragraph 14 alleges that all defendants knew or should have known of the dangers of asbestos.  Paragraph 16 singles out defendants Owens-Illinois, Inc., and Waco, Inc., who manufactured and supplied asbestos to the Shipyard and alleges negligence for failure to warn.  <u>Id.</u> at ¶ 16.  Although this paragraph refers to asbestos as a "defective product" that is "unreasonably dangerous," it only makes such allegations with respect to asbestos that lacks a warning and therefore, is most properly construed as alleging failure to warn.  Specifically, paragraph 16 states that the non-Shipyard defendants provided a "defective product in the stream

---

lists its "Applicability" as "all shipyard departments involved in the receiving, storage, moving and handling of asbestos and asbestos-containing material."  <u>Id.</u>  Furthermore, plaintiff provides interrogatory answers submitted by NNS in a prior case in which NNS stated in response to an asbestos safety question that "all health and safety programs or policies are applicable to all yard work, both commercial and governmental contracts."  <u>Id.</u> at Exhibit D.

of commerce <u>in that they failed to warn</u> Plaintiff's Decedent, and others similarly situated," and

that non-Shipyard defendants continued to "manufacture, sell, distribute and/or install asbestos

products when each Defendant knew that such products were unavoidably unsafe [and]

unreasonably dangerous <u>absent reasonable warnings</u>." <u>Id.</u> (emphasis added).  Paragraph 17

singles out the Shipyard defendants and, in fifteen subsections constituting over three and a half

pages of text, clearly alleges negligence only for failure to warn and failure to establish

workplace safety procedures.[6]  Although defendants attempt to establish that the final subsection

of paragraph 17 alleges a design defect, when read in conjunction with the rest of this paragraph,

defendants' claim is  erroneous.[7]  Rather, plaintiff's rebuttal properly characterizes paragraph 17

as only alleging negligence based on failure to warn.[8]  <u>See</u> Pl. Rebuttal at p.10-14.

---

[6] As stated above, on these facts, failure to institute workplace safety procedures is
synonymous with failure to warn.

[7] The first fourteen subsections of paragraph either allege failure to warn, failure to
educate, or failure to establish proper safety and handling procedures. The final subsection states:
> In failing, as contractors who employed Plaintiff and Plaintiff's father, to provide
> the Plaintiff and Plaintiff's father with a safe work place and to prevent the
> Plaintiff's Decedent and others similarly situated from being harmed by asbestos
> dust and fibers that were used by the Plaintiff, Plaintiff's father and their co-workers
> in the performance of the Defendants' contracts for the installation, removal, repair,
> or other use of asbestos and/or asbestos-containing products on Defendants' private
> premises.

Mo. for Judgment, ¶ 17(o).  Although this paragraph references defendants' failure to provide a
safe workplace, when read in conjunction with the previous fourteen subsections, such allegation
clearly refers to defendants' failure to warn employees or establish workplace safety procedures.
Therefore, defendants' characterization of paragraph 17(o) is erroneous.

[8] The parties also both cite and discuss <u>Mitchell v. AC&S Inc.</u>, No. 04-cv-2713 (E.D. Va.
Dec. 15, 2004) a recent asbestos case in which this court denied the plaintiff's motion to remand.
However, in <u>Mitchell</u>, the issue central to the present matter was not disputed.  Specifically, the
Motion for Judgment in <u>Mitchell</u> alleged that all defendants, including the civilian contractor
"did fail to remove the product or products from the market when the defendants knew or should
have known of the hazards of exposure to asbestos"; "did sell the products which were defective
and/or inherently dangerous"; "did supply the products which were defective and/or inherently

Defendants next claim that paragraph 18 of plaintiff's Motion for Judgment alleges that the Shipyard was negligent for failing to use asbestos-free products.  Unlike paragraphs 16 and 17, which allege negligence against specific defendants in detailed subsections, paragraph 18 appears to address all defendants and does not allege negligence but rather states in a single paragraph that certain actions were feasible.  Paragraph 18 in its entirety states:

> At all times relevant hereto, it was feasible for the Defendants to have protected Plaintiff's Decedent from asbestos exposure, adequately warned Plaintiff's Decedent, tested their asbestos-containing products, designed safer asbestos containing products, or substituted asbestos-free products.

Mo. for Judgment, ¶ 18.  After careful consideration of this paragraph, the court concludes that it was not intended to add additional theories of liability with respect to Shipyard defendants. Although this paragraph, if read alone, would not necessarily foreclose a court from concluding that a design defect was alleged, this court does not consider such language in a vacuum.  Rather, this short paragraph, considered in conjunction with the detailed allegations set out against the Shipyard in paragraph 17, is insufficient to transform plaintiff's claims against the Shipyard into allegations premised on products liability.[9]  Therefore, as plaintiff's Motion for Judgment only

---

dangerous"; "did fail to use safe, substitute products when such were available"; "did fail to design a reasonable and safe product for the purpose for which they were intended." See Def. Opp. to Remand, Exhibit G at ¶ 10.  Additionally, ¶ 12 stated: "[I]n addition, the defendants were under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended, and they negligently breached this duty . . . ." Id.  Therefore, it is clear from the language of the Motion for Judgment in Mitchell that the plaintiff was alleging a design defect claim; thus, the reasoning in Mitchell does not apply to the present matter.

[9] Paragraph 17 and its numerous subsections clearly allege only that the Shipyard was negligent for failure to warn.  The only statements outside paragraph 18 that could arguably be construed as alleging a design defect were made against non-Shipyard defendants in paragraph 16.  Therefore, although the court construes plaintiff's Motion for Judgment as alleging only failure to warn against all defendants, if the court were to construe paragraph 18 as alleging a design defect claim, based on the language in paragraphs 16 and 17, such claim would be alleged only against Owens-Illinois and Waco, not against the Shipyard.

alleges negligence on the part of the Shipyard for failure to warn, remand is required as defendants have failed to establish a colorable federal defense or establish a casual nexus between the use of asbestos as mandated by the Navy and the Shipyard's failure to warn employees or establish safety procedures.

### III. Conclusion

Based on the memoranda and materials submitted to this court, as well as plaintiff's Motion for Judgment filed in state court, the court finds that the requirements necessary for removal pursuant to 28 U.S.C. § 1442(a)(1) have not been met.  Because plaintiff's Motion for Judgment only seeks relief against the Shipyard for failure to warn, pursuant to 28 U.S.C. § 1447(c), plaintiff's motion to remand this case to the Circuit Court for the City of Newport News, Virginia, is **GRANTED**.  It should be noted, however, that as plaintiff has argued before this court in good faith that he is only seeking relief against the Shipyard on the theory of failure to warn, plaintiff should be precluded on remand from seeking relief against the Shipyard on any theory other than failure to warn and the associated claim of the Shipyard's failure to establish safety procedures.

The Clerk is **REQUESTED** to mail a certified copy of this Order to the Clerk of the Circuit Court for the City of Newport News, Virginia, as well as copies to counsel for all parties.

**IT IS SO ORDERED.**

/s/
_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January  11  , 2006